

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 9, 2007**

_____
**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LETITIA HUGHES, | § | CASE NO. 06-32726-SGJ-7 |
| | § | |
| D E B T O R. | § | |

### MEMORANDUM OPINION AND AMENDED ORDER DISMISSING CASE WITH PREJUDICE AND IMPOSING ADDITIONAL MONETARY SANCTIONS

On August 11, 2006, the court entered an Order Dismissing Case with Prejudice and Imposing Sanctions (the "August 11, 2006 Dismissal Order"). This Memorandum Opinion and Amended Order now amends the August 11, 2006 Dismissal Order, primarily to impose more significant monetary sanctions upon the Debtor—due to what the court perceives to be a flagrant abuse of the bankruptcy process by a serial bankruptcy filer—and secondarily, to

hopefully deter the Debtor and others who follow her modus

operandi from further gaming the bankruptcy system.

## I.   INTRODUCTION

This is the story of a serial bankruptcy filer.[1]  The court
begins with the proposition that not all serial bankruptcy filers
should be viewed or treated similarly under the law.  Some
multiple-bankruptcy-filing debtors make inadvertent or
unintentional mistakes in filing or prosecuting their cases,
resulting in their cases being dismissed, and finding themselves
having to start all over (frequently, these are *pro se* debtors
who learn the hard way that they probably should have consulted
counsel to begin with, to guide them through the not-so-simple
set of forms and requirements that one must complete to be
eligible for bankruptcy relief).  Some serial bankruptcy filers
fall on hard times postpetition—losing a job or sustaining an
injury or illness, resulting in the inability to perform under a
plan.  Some serial filers perhaps incur unanticipated
postpetition expenses—such as costly car repairs, or additional
household costs when a spouse or roommate abruptly leaves, or as
a result of a family member who unexpectedly requires support.

---

[1] "Serial bankruptcy filer" is, of course, not a defined term
in the Bankruptcy Code.  This court uses the term loosely to
describe an individual who files multiple bankruptcy cases in a
relatively short period of time, without ever receiving a
discharge through completion of a plan of rehabilitation or
otherwise successfully finishing a case.

There are probably as many legitimate (and sympathetic) causes for failure to confirm a plan or receive a discharge in a consumer bankruptcy case as there are stars in the sky.

However, this court has observed a disturbing number of serial bankruptcy filers who seem to be gaming the system. Scheme #1: Sometimes it is the same individual who, time-after-time, files bankruptcy on the eve of a scheduled foreclosure sale, without ever filing many of the required forms (and perhaps not even submitting a full filing fee)—such individual often allows his or her case to be dismissed with little or no attempt at prosecution of the case. Scheme #2: Sometimes it is, first, a husband alone who files bankruptcy, then a wife alone, then the husband again (and back and forth), each with a pattern of less-than-zealous prosecution of their cases—basically keeping their respective bankruptcy cases alive just long enough to avert the crisis du jour. Scheme #3: Still other times there is a bankruptcy-filing-by-proxy phenomenon, such as when an individual purports to convey a small percentage of an ownership interest in a parcel of real property he or she owns (perhaps the individual's homestead) to some third party, and then the third party files bankruptcy on the eve of a foreclosure sale to invoke the automatic stay as to "his" minuscule ownership interest in

-4-

the property.  The above-referenced debtor, Letitia Hughes, a not

unsophisticated real estate broker (the "Debtor"), has now

mastered two of the three described schemes.  Even more

troubling, not only has she personally participated in the

schemes, but she appears to have co-opted, advised, or assisted

others in implementing such schemes.

## II.  REVELATIONS AT FIRST SHOW CAUSE HEARING

The above-referenced case was filed on July 3, 2006.  This

court soon became aware that this case was one of many filed by

the Debtor and, in fact, was filed in violation of an order

entered February 22, 2006 by Chief Bankruptcy Judge Barbara J.

Houser.  Specifically:

1.  *In re Letitia Hughes*, Case No. 03-37876-HDH-7, filed

August 4, 2003.  This case was dismissed without prejudice on

August 23, 2003 for failure by the Debtor to file a mailing

matrix.  On December 6, 2004 (when the Debtor filed her fourth

case–see item #4 below), the Debtor paid the filing fee in full

for this case.

2.  *In re Letitia Hughes*, Case No. 03-81118-SAF-13, filed

on October 31, 2003.  This case was dismissed with prejudice for

180 days on December 10, 2003, for the Debtor's failure to file

schedules and statement of financial affairs.  The Debtor filed a

-5-

motion to reinstate this case on December 16, 2003, also seeking permission to convert the case to a Chapter 13 case, and an order vacating the dismissal order and converting case to Chapter 13 was entered on March 4, 2004. After Debtor's failure to prosecute the Chapter 13 case (and failure to pay filing fee in full), an order dismissing case with prejudice for 180 days was entered on March 25, 2004. On December 6, 2004 (when the Debtor filed her fourth case–see item #4 below), the Debtor paid the filing fee in full for this case.

3. *In re Letitia Hughes*, Case No. 04-80857-HDH-13, filed on October 4, 2004 (filed just outside the 180-day filing bar imposed in Case #2). This case was dismissed without prejudice on October 14, 2004, for the Debtor's failure, once again, to file a mailing matrix. On December 6, 2004 (when the Debtor filed her fourth case–see item #4 below), the Debtor paid the filing fee in full for this case.

4. *In re Letitia Hughes*, Case No. 04-83215-BJH-13, filed on December 6, 2004. This case was dismissed with prejudice for one year on January 28, 2005, pursuant to the Chapter 13 Trustee's motion to dismiss case with prejudice, which called to the court's attention the fact that the Debtor appeared to be a

-6-

serial filer not seriously prosecuting her various cases. Filing fees of $144 are still owed in this case.

5. *In re Letitia Hughes*, Case No. 06-30534-BJH-7, filed February 7, 2006 (filed just outside the one-year filing bar imposed by Case #4) . This case was dismissed on February 22, 2006, for the Debtor's failure once again to file a mailing matrix. In the February 22, 2006 dismissal order, the Debtor was barred from filing another case for 180 days (or until approximately August 22, 2006). Filing fees of $224 are still owed in this case.

6. *In re Letitia Hughes*, Case No. 06-32726-SGJ-7, filed July 3, 2006. The present case was filed in violation of the order entered February 22, 2006, in Case #5, Case No. 06-30534-BJH-7, dismissing case with prejudice for 180 days. Filing fees of $249 are still owed in this case.

Once this court became aware of the above pattern of filing, it entered an order on July 11, 2006, requiring the Debtor to appear before the court and show cause why (A) the Debtor ought not to be held (I) in contempt of court for violation of the February 22, 2006 order dismissing case with prejudice, and (II) liable for past due filing fees, and (B) Debtor's current case should not be dismissed with prejudice to refiling for one year

-7-

(the "July 2006 Show Cause Order"). The hearing on the July 2006 Show Cause Order was held on August 9, 2006, at which the Debtor, though duly noticed at the address shown on her voluntary petition (1546 Windchime Drive, Dallas, Texas, 75224), failed to appear. The United States Trustee and a mortgagee, Litton Loan Services, did appear at the hearing.

At the August 9, 2006 hearing, the court reviewed in detail the record of the prior six cases and realized none of them had been seriously prosecuted. The Debtor never filed Schedules in any of her six cases, and she filed a Statement of Financial Affairs in only one case—checking "None" as the answer for every single question (except for Question #1 in which she indicated that she was self-employed). Additionally, the Debtor's voluntary petitions each time failed to identify her prior bankruptcy cases. And, of course, the present case was filed in violation of Chief Bankruptcy Judge Houser's February 22, 2006 court order. Within 30 days of the present case, two creditors sought relief from the automatic stay. Upon reviewing the evidence regarding the Debtor's conduct, the court was persuaded that the Debtor has engaged in a systematic abuse of the bankruptcy system which was indicia of egregious behavior and bad

-8-

faith. Under these circumstances, the court found that a
sanction was appropriate.

In calculating the amount of the sanction, the court noted
that one court had observed in an analogous context that, since a
chapter 13 trustee is "a salaried employee supervised by the
United States Trustee and serves a quasi-governmental function,"
an assessment of attorney fees was not an appropriate measure of
sanction, and instead used a "level appropriate to punish the
participants and to deter future sanctionable conduct." *In re
Armwood,* 175 B.R. 779, 791 (Bankr. N.D. Ga. 1994). As with all
judicially imposed sanctions, the court must impose the least
onerous sanction that addresses the situation. *In re First City
Bancorporation of Texas Inc.*, 282 F.3d 864, 867 (5th Cir. 2002.
It was for these reasons that, on August 11, 2006, the court
issued its Order Dismissing Case with Prejudice and Imposing
Sanctions (as earlier defined, the "August 11, 2006 Dismissal
Order"), wherein the court, among other things, (a) dismissed the
case with prejudice to the Debtor filing any petition in
bankruptcy for a period of two years (provided, however, that
upon proper application to the court justifying relief, the
Debtor might, at any time, request the Court to allow a
bankruptcy petition to be filed); (b) ordered that the Debtor

-9-

could not file any future case until paying all past due filing fees totaling $617.00; (c) imposed an additional sanction of $1,000, payable to the Clerk of the Bankruptcy Court, "to promote a perception of fairness and to protect the integrity of the bankruptcy process for those who do comply"; and (d) *in rem* relief was ordered as to certain real property of the Debtor.

### III.   SUBSEQUENT GAMING OF THE SYSTEM:
### THE "PAULA DENISE HUGHES" BANKRUPTCY FILING

Apparently, the August 11, 2006 Dismissal Order was insufficient to deter the Debtor.  Obviously unfazed by such order, another bankruptcy petition was filed on November 7, 2006—only this time, by **Paula Denise Hughes**, Case No. 06-34891-SGJ-7.  Just like the half-dozen cases filed by **Letitia Hughes**, this case was filed *pro se*, without a full filing fee, and without most of the required forms such as mailing matrix, schedules, statement of financial affairs, or certificate of credit counseling.  The case was dismissed without prejudice on December 1, 2006, for the various filing deficiencies.  This case—at first blush unremarkable—would, likely, have never captured any significant attention of this court had it not been for a vigilant creditor, who moved for vacatur of the dismissal

-10-

order and certain other relief, and asked for a hearing.[2]  At

such hearing, some interesting evidence was submitted.

## IV.  THE DECEMBER 20, 2006 HEARING

On December 20, 2006, the court held a hearing regarding

whether to vacate the dismissal order in the matter of Paula

Denise Hughes.  Amazingly, Letitia Hughes appeared at the hearing

and voluntarily took the witness stand.  Ms. Hughes testified as

to (or confirmed) the following:

1.  Letitia Hughes is the niece of the debtor Paula Denise

Hughes, and Aunt Paula, unfortunately, could not attend the

hearing that day.

2.  Aunt Paula is now a co-owner of the house at 1546

Windchime Drive, Dallas, Texas  75224 (which is listed as the

address of Letitia Hughes in certain of Letitia Hughes' voluntary

petitions).[3]  Aunt Paula had acquired her interest in the

property (from an Alfonso Wilburn) on March 6, 2006, for a price

---

[2] The vigilant creditor was Barclays Capital Real Estate
Inc. d/b/a Homeq Servicing, as Servicer for Wells Fargo Bank,
N.A. as Trustee under Pooling and Servicing Agreement dated as of
September 1, 2004 Asset-Backed Pass-Through Certificates Series
2004-WHQ1 ("Homeq").

[3] Interestingly, **1542** Windchime Drive, Dallas Texas, was
listed as Letitia Hughes' address in certain of her voluntary
petitions—as it turns out, Letitia Hughes has been an owner of
the real property at both 1542 Windchime and 1546 Windchime.

-11-

of $10.[4]  The property at 1546 Windchime Drive, Dallas, Texas, is
not Letitia Hughes' (or Aunt Paula's) homestead and never has
been; neither of them currently reside there.  Letitia Hughes had
previously lived at 1542 Windchime Drive, the property next door,
but subsequently that property was sold.  Letitia Hughes owns
three separate real properties.

3.  Letitia Hughes (and Aunt Paula) own the property at 1546
Windchime for investment purposes and each filed bankruptcy
various times to protect it.  Earlier, there had been a tenant at
the property, but the tenant has vacated the premises.  The
property is now unoccupied.

4.  Letitia Hughes testified she received an order
dismissing her sixth bankruptcy case, but does not remember
receiving any order dismissing it with prejudice to refiling.
She testified that Alfonso Wilburn, Jr. picks up the mail at 1546
Windchime (the place where the August 11, 2006 Dismissal Order
was mailed).  This is interesting, in that Alfonso Wilburn, Jr.
supposedly no longer owns an interest in 1546 Windchime (having

_____

[4] The loan documents submitted into evidence showed four
borrowers on the note (now held by Homeq) secured by 1546
Windchime:  Letitia Hughes, Alfonso Wilburn, Jr., Delores
Wilburn, and Tula Jefferson.

-12-

allegedly conveyed his interest in the property to Aunt Paula in March 2006).

5. Alfonso Wilburn, Jr. and Letitia Hughes are co-workers/real estate agents for Laurent & Associates Real Estate Company.

6. The evidence was that Letitia Hughes and the other obligors on the note secured by the 1546 Windchime property were more than one year behind in making payments on the note as of the time of the December 20, 2006 hearing. Letitia Hughes testified that she had been trying to sell the 1546 Windchime property for quite some time. She testified that at least some of her bankruptcy filings had been about trying to save the 1546 Windchime property and some of her bankruptcy filings had been about trying to save the 1542 Windchime property.

7. The evidence suggested that Letitia Hughes had at least partially assisted one other serial bankruptcy filer in this district: a Kenneth Dudley Graves. Letitia Hughes denied this (although her denial was less than credible to this court). Mr. Graves was conveyed two real property interests on the eve of scheduled foreclosures by certain apparently unrelated third parties, and then Mr. Graves promptly filed bankruptcy, stopping the foreclosures on the two properties. The Warranty Deeds

-13-

conveying the two property interests to Mr. Graves were notarized by Letitia Hughes.

8. Letitia Hughes also clearly assisted Aunt Paula. Not only did she appear on Aunt Paula's behalf at the December 20, 2006 hearing, but a fax trail on some correspondence Homeq received regarding the Paula Denise Hughes' bankruptcy filing (*i.e.,* noticing Homeq of the Paula Hughes bankruptcy filing) showed the bankruptcy notice was being sent from the same fax number Letitia Hughes uses at Laurent & Associates Real Estate Company.

9. The website for Laurent & Associates Real Estate Company—and specifically the biography for Letitia Hughes—indicates that, among other things, Letitia Hughes specializes in foreclosures.

## V. CONCLUSIONS

It appears to this court that Letitia Hughes is manipulating the bankruptcy system. She has filed six bankruptcy cases in her own name in three years, without any serious attempt at prosecuting the cases; she has filed at least one known bankruptcy case by proxy (the court wonders whether Aunt Paula even knows about her property interest in 1546 Windchime that she purportedly acquired for $10, or whether she knows about her own

-14-

bankruptcy filing); and Letitia Hughes appears to have possibly assisted others—Kenneth Dudley Graves and the third parties that conveyed property interests to him—through Laurent & Associates Real Estate Company's offices, in the same strategy.

The filing of repetitive bankruptcy cases to forestall secured creditors from exercising foreclosure rights, and without any intent to comply with basic bankruptcy requirements, is an abuse of process and a violation of the spirit and intent, if not the actual letter, of the Bankruptcy Code.  The bankruptcy courts are intended to be a haven for the honest but unfortunate debtor who has no other viable option to save property and deal with creditors.  Individuals who participate in schemes such as Letitia Hughes not only impose a burden on the judicial system at the American taxpayer's expense (due to the wasted time and expense undertaken by clerk personnel, court personnel, and personnel of the U.S. Trustee system in processing these cases), but also likely increase the cost of capital to the rest of the public (due to the untold wasted collection dollars incurred by the secured lender), and generally put a taint on the entire system.

Letitia Hughes' actions are abusive and have caused unreasonable delay that has caused prejudice to her lenders and a

-15-

burden to this Court, the Clerk and the U.S. Trustee system. The court finds her conduct to be sanctionable.

"[C]onsideration by a bankruptcy court of a civil contempt [sanction] . . . will encompass only two issues: whether the alleged contemnor knew of [an] order [she violated] and whether [s]he complied with it. . . . [T]he issue of whether the alleged contemnor substantially complied with the underlying order may well raise questions as to the nature, contents, and meaning of the underlying order, whether the alleged contemnor knew of it, and whether his conduct complied with it, which questions are well within the special knowledge and expertise of the bankruptcy court." *Kellogg v. Chester*, 71 B.R. 36, 38 (N.D. Tex. 1987). There must be, in a civil contempt proceeding, "clear and convincing evidence that: 1) a court order was in effect; 2) the order required certain conduct by the respondent; and 3) that the respondent failed to comply with the order." *In re LATCL&F, Inc.*, 2001 WL 984912, *3 (N.D. Tex. 2001) (*citing Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987)). "[T]he factors to be considered in imposing civil contempt sanctions are: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may

-16-

impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (*citing United States v. United Mine Workers*, 330 U.S. 258 (1947)). "Civil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate parties for losses resulting from the contemptor's non-compliance with a court order." *In re Gervin*, 337 B.R. 854, 858 (W.D. Tex. 2005) (*citing United States v. United Mine Workers*, 330 U.S. 258 (1947)). "[I]ntent is not an element in civil contempt matters. Instead, the basic rule is that all orders and judgments of courts must be complied with promptly." *In re Unclaimed Freight of Monroe, Inc.*, 244 B.R. 358, 366 (Bankr. W.D. La. 1999). *See also In re Norris*, 192 B.R. 863, 873 (Bankr. W.D. La. 1995) ("Intent is not an element of civil contempt.").

This court believes the evidence is clear and convincing that Letitia Hughes knew of the August 11, 2006 Dismissal Order, barring her from filing bankruptcy for two years absent specific permission from the court, and she knowingly and willfully evaded the order by assisting her Aunt Paula with the filing of her own frivolous bankruptcy petition. Letitia Hughes, although acting *pro se*, is not an unsophisticated person and she is not a

-17-

desperate, sympathetic, down-on-her-luck debtor trying to save a homestead or other important property necessary to herself or a family. She is a real estate broker. She owns three parcels of real property. The property she is trying to save was formerly rented, is vacant and has been held by her and others for investment purposes.

In addition to the foregoing, this court is mindful that a sanction of the bankruptcy court should be at a "level appropriate to punish the participants and to deter future sanctionable conduct," *Armwood,* 175 B.R. 791, and the court must impose the least onerous sanction that addresses the situation. *First City Bancorporation of Texas Inc.*, 282 F.3d at 867. The August 11, 2006 Dismissal Order, which ordered Letitia Hughes to refrain from filing bankruptcy for two years (absent specific permission), and pay the $617 worth of unpaid filing fees and an additional sanction of $1,000, was obviously ineffective. Letitia Hughes willfully circumvented it. It did nothing to deter Letitia Hughes' actions. Others (namely Homeq, but to a lesser degree the bankruptcy clerk and court, the U.S. Trustee system and public) have been harmed by her actions. Therefore, it is

-18-

**ORDERED** that Letitia Hughes is now sanctioned $10,000, payable within ten days of the entry of this order to the Clerk of the United States Bankruptcy Court, Northern District of Texas; it is further

**ORDERED** that, in the event the above sanction is not paid within ten days of the entry of this order to the Clerk of the United States Bankruptcy Court, this court will make an appropriate referral to the United States District Court for the Northern District of Texas, Dallas Division, to ensure that the Debtor purges her contempt by paying the sanction; it is further

**ORDERED** that Letitia Hughes and all those in concert with her shall cease and desist from filing bad faith bankruptcy petitions on Letitia Hughes' or others' behalves, in this or any other bankruptcy court; it is further

**ORDERED** that all provisions of the August 11, 2006 Dismissal Order (including the requirement that the Debtor pay past due filing fees of $617, a sanction of $1,000, refrain from filing any petition for two years, and the in rem relief granted as to certain properties) remain intact; it is further

-19-

**ORDERED** that this case is reopened for the limited purposes of entering and implementing this Memorandum Opinion and Amended Order.

###END OF ORDER###